2004 UT App 327

**WEST VALLEY CITY, Plaintiff and Appellant,**

v.

**DOUGLAS W. MARTIN dba Fantastic Sam's, and Does 1 through 10, Defendants and Appellee.**

**Douglas W. Martin dba Fantastic Sam's, Counterclaim Plaintiff,**

v.

**West Valley City, Counterclaim Defendant.**

No. 20030299–CA.

Court of Appeals of Utah.

Sept. 23, 2004.

J. Richard Catten, West Valley City Attorney's Office, West Valley City, for Appellant.

James L. Christensen and Christopher G. Jessop, Corbridge Baird & Christensen, Salt Lake City, for Appellee.

Before Judges DAVIS, GREENWOOD, and THORNE.

## OPINION

THORNE, Judge:

¶ 1 West Valley City appeals from the trial court's memorandum decision denying its motion for summary judgment on Douglas W. Martin's claim for just compensation following condemnation of a leasehold interest. We reverse.

## BACKGROUND

¶ 2 In 1996, Martin purchased a Fantastic Sam's franchise located in West Valley City (the City). The franchise, a hair salon, occupied a leased portion of the first floor of a commercial building (the Heartland property) owned by Heartland West Valley Commercial Limited Partners II (Heartland). The lease came up for renewal in 1998 and Martin and Heartland executed a new ten-year lease. At all times relevant to this matter Martin paid the rents due under the lease and otherwise complied with the lease terms.

¶ 3 The lease contained provisions addressing condemnation of the premises for public use. Article XIX of the lease, entitled Eminent Domain, provided that the lease would terminate upon a condemning authority taking possession of the premises. Martin ex-

pressly waived all right to share in any condemnation award, and any such award was to go in its entirety to the landlord, Heartland. Martin reserved the right to pursue the condemning authority, but not the landlord, for any other damages that might be available to him.[1]

¶4 In 2001, the City needed expanded facilities to house its justice court and police department. The City determined that the Heartland property was the best available location for such an expansion due to its close proximity to the existing city hall. The City passed resolutions authorizing the issuance of municipal bonds to pay for the purchase of the Heartland property, and authorizing the City to negotiate that purchase. In June 2001, the City and Heartland entered into a contract in which the City agreed to purchase the Heartland property for $3,735,000. The purchase agreement included a term that "[the City] shall accept the property subject to all tenancies now in effect, provided that [Heartland] shall, at its sole expense, cause all first floor tenants to vacate the Building no later than March 1, 2002."

¶5 On September 18, 2001, the City and Heartland executed an assignment of the leases then in effect between Heartland and various tenants, including Martin. Under the terms of the assignment, Heartland was to "negotiate [at its sole cost and expense] amendments to any leases ... occupying first floor space, such that said lessees shall vacate first floor space no later than March 1, [2002]."[2] In the event that Heartland failed to amend the leases to the City's satisfaction by December 1, 2001, the City retained the authority to take action, including the use of eminent domain, to ensure that the first floor was vacant by March 1, 2002. The assignment further provided that the City accepted the assignment of the leases "on the terms described herein." The sale closed on September 19, 2001.

¶6 On November 12, 2001, the City and Heartland amended their purchase agreement to release Heartland from its obligation to cause Martin to vacate the premises. In exchange for this release, Heartland paid the City $60,000.

¶7 On November 27, 2001, the City gave Martin written notice to vacate the premises no later than March 1, 2002. Martin responded by letter indicating that he would not vacate the premises by that date. In January 2002, the City filed the instant unlawful detainer and eminent domain action against Martin. Martin filed counterclaims against the City, alleging various contractual theories, abuse of process, and a claim for just compensation for the taking of his leasehold interest in the premises.

¶8 The City filed a motion for immediate occupancy of the premises, which the trial

---

1. The relevant sections of Article XIX stated:

Section 19.01 *Total Condemnation of Premises*. If the whole of the premises shall be acquired or condemned by eminent domain for any public or quasi-public use or purpose, then the Lease Term shall cease and terminate as of the day possession of the premises is taken by the condemning authority and all rentals shall be paid up to that date and Tenant shall have no claim against Landlord nor the condemning authority for the value of any unexpired Lease Term of this Lease.

. . . .

Section 19.04 *Landlord's Damages*. In the event of any condemnation or taking as aforesaid, whether in whole or in part, Tenant shall not be entitled to any part of the award paid for such condemnation, and Landlord shall be entitled to receive the full amount of such award; Tenant hereby expressly waiving any right or claim to any part thereof.

Section 19.05 *Tenant's Damages*. Although all damages in the event of any condemnation are to belong to Landlord, whether such damages are awarded for compensation for diminution in value of the Leasehold or to the fee or the fee estate in this premises, Tenant shall have the right to claim and recover from the condemning authority, but not from Landlord, such compensation as may be separately awarded or recoverable by Tenant in Tenant's own right on account of any and all damage to Tenant's business by reason of the condemnation and for, or on account of, any cost or loss to which Tenant might be put in removing Tenant's merchandise, furniture, fixtures, Leasehold improvements and equipment.

Section 2.01 of the lease expressly defined the term "premises" to mean the space leased by Martin rather than the Heartland property as a whole.

2. The assignment stated that the first floor tenants were to vacate by March 1, 2001, but it is clear from the context and the analogous terms in the purchase agreement that the parties intended the deadline to be March 1, 2002.

court granted on March 5, 2002. Pursuant to the terms of the court's immediate occupancy order, the City deposited $30,100, an amount equal to the appraised value of the condemned property interest, with the clerk of the court. Martin promptly withdrew the funds as allowed by the court's order, and vacated the premises.

¶ 9 In the summer of 2002, both parties filed motions for summary judgment. The trial court ruled on the motions on March 18, 2003, finding that the lease was not terminated by the City's purchase of the Heartland property, but that the lease terminated when the City took possession of the premises in March 2002. The trial court also determined that the City retained condemnation authority over the Martin leasehold despite purchasing the Heartland property. The trial court relied on these determinations to grant summary judgment to the City on Martin's contract and abuse of process claims, and to Martin on the City's claim for unlawful detainer. The court found that it could not resolve the City's eminent domain claim or Martin's just compensation claim at the summary judgment stage because a factual question existed as to the value of Martin's leasehold in the premises.

¶ 10 The City sought and received permission to appeal the trial court's interlocutory order, and brings this timely appeal.

## ISSUES AND STANDARDS OF REVIEW

■■■■ ¶ 11 The City challenges the trial court's rulings denying summary judgment on the eminent domain and just compensation claims, asserting that the trial court based those rulings on incorrect interpretations of the parties' lease. A trial court's interpretation of the terms of an unambiguous, integrated contract presents a question of law and is reviewed for correctness on appeal. See ELM, Inc. v. M.T. Enters., Inc., 968 P.2d 861, 863 (Utah Ct.App.1998). The propriety of a trial court's summary judgment order is a matter of law. See WebBank v. American Gen. Serv. Corp., 2002 UT 88, ¶ 10, 54 P.3d 1139. In deciding whether summary judgment is appropriate, the appellate court reviews whether the trial court erred in applying the relevant law and

whether a material fact was in dispute. See id.

## ANALYSIS

¶ 12 The City argues that the lease prohibited Martin from receiving compensation in the event of public acquisition of the premises through eminent domain. We agree. Martin contractually waived his right to compensation in the event that his leasehold was condemned, transferring his compensation rights to his landlord. The City did in fact condemn the leasehold, and the City's status as Martin's landlord does not preclude such condemnation or invalidate Martin's waiver of compensation. Because we conclude that Martin waived the very compensation he now seeks, no relevant factual question remains to be answered at trial. Thus, the trial court erred in failing to grant summary judgment to the City on Martin's just compensation claim.

### 1. Martin Contracted Away His Right to Share in Compensation

■■■ ¶ 13 In our view, Martin's claim that he is entitled to compensation for the loss of his leasehold is resolved by the waiver language contained in the lease. Section 19.01 of the lease provides that, in the event of a total condemnation of the premises, "Tenant shall have no claim against Landlord nor the condemning authority for the value of any unexpired Lease Term of this Lease." Section 19.04 further states:

> In the event of any condemnation or taking as aforesaid, whether in whole or in part, Tenant shall not be entitled to any part of the award paid for such condemnation, and Landlord shall be entitled to receive the full amount of such award; Tenant hereby expressly waiving any right or claim to any part thereof.

This waiver language is express and unambiguous, and is part of an enforceable condemnation clause. See, e.g., Fibreglas Fabricators, Inc. v. Kylberg, 799 P.2d 371, 375–76 (Colo.1990) (discussing and applying condemnation clause).

¶ 14 The parties dispute whether or not the compensation waiver language was trig-

gered and, if so, by what event. The City argues that the clause was triggered upon the City's purchase of the Heartland property for public use. Martin argues that the triggering phrase "[i]f the whole of the premises shall be acquired or condemned by eminent domain for any public or quasi-public use or purpose" is satisfied only by the actual condemnation of the entire Heartland property and not by its acquisition by other means.

¶ 15 While some courts have held that a lease termination clause that is triggered by condemnation proceedings is also triggered by a conveyance of property by deed in lieu of condemnation,[3] we need not address whether or not a conveyance in lieu of condemnation occurred in this matter or the effect of such a conveyance under Utah law. In this case, the lease termination clause and the accompanying damages waiver specifically refer to the premises leased by Martin, not to the Heartland property as a whole. The trial court established that the City had the authority to separately condemn Martin's leasehold interest, and Martin expressly concedes in his appellate brief that such a condemnation occurred.

¶ 16 Section 19.01 of the lease provides that, upon condemnation, "the Lease term shall cease and terminate as of the day possession of the premises is taken by the condemning authority." It is undisputed that the City actually took possession of the premises pursuant to court order on or around March 5, 2002, terminating Martin's leasehold interest as a matter of law. At that point, pursuant to the lease, the City could have sought compensation in its landlord capacity against itself as the condemning authority. The City's decision to forego this senseless formality has no bearing on this matter and does not revive Martin's right to seek compensation on his own behalf.

¶ 17 Martin contractually agreed that he would "not be entitled to any part of the award paid for ... condemnation" of his leasehold, transferring his interest in "the full amount of such award" to his landlord. For this reason, Martin is not entitled to

recover any compensation for his leasehold, and the trial court erred when it failed to grant summary judgment to the City.

### 2. City's Status as Landlord is Irrelevant

¶ 18 Martin argues that once the City purchased the Heartland property and accepted assignment of the lease, the City became Martin's landlord subject to all of the requirements and obligations of the lease. Martin argues that he was entitled to possession of the premises for ten years under his lease with Heartland, and that the City stepped into Heartland's shoes when it assumed the lease. In this context, Martin argues, the City's use of its eminent domain power to evict Martin from the premises breached its contractually assumed duty to allow Martin to retain possession of the premises through 2008.

¶ 19 Martin's arguments ignore important limiting language in the assignment of the lease from Heartland to the City. Specifically, the City accepted the assignment of Martin's lease subject to Heartland's obligation to cause Martin to vacate the premises by March 1, 2002. The City also expressly reserved the right to use its eminent domain powers to evict Martin if Heartland had not successfully negotiated his departure from the premises by December 31, 2001. This reservation of the right to evict Martin is inconsistent with any obligation on the part of the City to allow Martin the possession or quiet enjoyment of the premises after March 1, 2002.

¶ 20 Martin provides no argument or authority as to why such a qualified acceptance of the lease assignment should not be enforced by the courts. To the contrary, the Utah Supreme Court has recognized, at least in dicta, that a party accepting an assignment of a lease may refuse to accept particular obligations of the lease through appropriate language of limitation in the written assignment.

"If the party accepting the lease does not desire or intend to [perform the conditions of the lease accepted], or if it is not the

---

**3.** *See, e.g., Department of Transp. v. Platolene "500," Inc.,* 33 Ill.App.3d 470, 337 N.E.2d 100, 101–103 (1975); *Vincent v. Redevelopment Auth.,* 87 Pa.Cmwlth. 470, 487 A.2d 1024, 1025 (1985).

purpose of the acceptance of the lease to take it with all its burdens as well as its benefits, *the assignee can easily insert conditions in the acceptance that will exempt him from such liability as he does not care to assume."*

*Penelko, Inc. v. John Price Assocs., Inc.,* 642 P.2d 1229, 1237 (Utah 1982) (emphasis added) (quoting *Schmidt v. Louisville & N. R.R. Co.,* 139 Ky. 81, 129 S.W. 332, 335 (Ky.1910)). Here, the City conditioned its acceptance of the assignment of the Martin lease on Martin's vacation of the premises no later than March 1, 2002.

¶ 21 The City's eventual release of Heartland from its obligation to negotiate the termination of the Martin lease does not negate the limitations on the City's own lease obligations. Rather, the release merely shifted the contractual responsibility for ensuring Martin's removal from Heartland to the City. The $60,000 paid to the City by Heartland in exchange for this release reflects the parties' estimation of the value of the release, and does not represent either compensation for the Martin leasehold or, as Martin argues, a windfall to the City.

¶ 22 The City's option to use eminent domain in its capacity as a governmental entity is not inherently limited merely by its status as Martin's landlord. Such a limitation on the City's actions would necessarily be found in the language of the lease as accepted by the City. In light of the limitations and reservations contained in the City's acceptance of the Martin lease assignment, including the express reservation of the right to use eminent domain to ensure the vacation of the entire first floor no later than March 1, 2002, we conclude that the City was not restricted from using its eminent domain power to obtain the Martin leasehold because of its status as Martin's landlord.

¶ 23 We do not address today the question of whether, or how, the power of eminent domain may be limited by contract. Rather, we simply recognize that, in this case, the City expressly retained the right to use that power to take the premises and terminate Martin's leasehold interest if he still occupied the premises as of March 1, 2002.

### 3. Constitutional Claim for Compensation

¶ 24 Both parties cite to public policy in favor of their respective positions. The City argues that allowing Martin to proceed on his compensation claim would violate public policy by preferring the use of eminent domain over negotiated purchases of property. Martin argues that a public policy in favor of compensation, as expressly stated in the Utah Constitution, Article I, section 22,[4] entitles him to damages notwithstanding other provisions of the law.

¶ 25 We express no opinion on the preferability of negotiated purchases over eminent domain proceedings. We do, however, acknowledge that governmental entities ought to retain the option of negotiating the purchase of property for public use. Accepting Martin's argument that a City's landlord status precludes its use of eminent domain to acquire leaseholds, or trumps contractual compensation waivers, would significantly hamper a governmental entity's ability to negotiate the purchase of real property that is subject to existing lease obligations. Such a holding would, as a practical matter, preclude property owners from contracting with their tenants for the exclusive authority to negotiate the sale of property free of lease obligations.

¶ 26 While our decision today is based upon the contractual language in the lease and acceptance, we additionally note that a balancing of the public policies identified above favors the City's position. In contrast, Martin's alleged constitutional interest in compensation for the taking of his private property was vindicated when he voluntarily contracted away his right to compensation to Heartland, thereby allowing Heartland to negotiate a fair market value sale of the Heartland property to the City. We are unconvinced that Martin is constitutionally entitled to additional compensation under these circumstances.

4. Article I, section 22 of the Utah Constitution states that "[p]rivate property shall not be taken or damaged for public use without just compensation."

## CONCLUSION

¶ 27 Martin contracted away any right he may have had to receive just compensation for the condemnation of his leasehold interest in the premises when he transferred those rights to his landlord, Heartland. Martin has provided no basis upon which we could conclude that the City's purchase of the Heartland property or its assumption, with relevant reservations, of Heartland's landlord status provides good reason to relieve Martin of the effect of his explicit contractual transfer.

¶ 28 Because Martin contractually transferred his right to be compensated for the condemnation of his leasehold interest to his landlord, the trial court erred in failing to grant the City's motion for summary judgment on Martin's counterclaim for just compensation. Accordingly, we reverse the trial court's order denying summary judgment, and remand the matter for entry of judgment and other proceedings consistent with this opinion.

¶ 29 I CONCUR: PAMELA T. GREENWOOD, Judge.

¶ 30 I CONCUR IN THE RESULT: JAMES Z. DAVIS, Judge.