2005 UT App 315

James R. RUSSELL and Raylene Russell, for themselves and for all other similarly situated individuals and entities, Plaintiffs and Appellants,

v.

J. Scott LUNDBERG; Lundberg & Associates, a professional corporation; Backman Title Company, a Utah corporation; Backman–Stewart Title Services, Ltd., a Utah limited partnership; Canyon Anderson; Rodney Services Company, a Utah corporation; and John Does 1 through 10, Defendants and Appellees.

No. 20030938–CA.

Court of Appeals of Utah.

July 8, 2005.

542

Lester A. Perry, Hoole & King LC, Salt Lake City, for Appellants.

Richard M. Hymas, Gary A. Weston, Nielsen & Senior PC, R. Willis Orton, Alexander Dushku, and Romaine C. Marshall, Kirton & McConkie, Salt Lake City, for Appellees.

Before Judges DAVIS, JACKSON, and THORNE.

OPINION

THORNE, Judge:

¶ 1 James R. and Raylene Russell sued J. Scott Lundberg, the law firm of Lundberg & Associates, and others, alleging improprieties in the manner in which the defendants conducted foreclosure sales pursuant to the Russells' trust deeds. The trial court dismissed or granted summary judgment against each of the Russells' claims as to all defendants. We affirm in part and reverse in part.

## BACKGROUND

¶ 2 The Russells are Utah homeowners who purchased their property through a mortgage and trust deed in 1997. J. Scott Lundberg acted as trustee under the trust deed at all times relevant to this matter. Aside from being designated in the trust deed, Lundberg was not involved in the property transaction and had no relationship with the Russells.

¶ 3 The Russells' property went into foreclosure on three separate occasions between 1997 and 2001, and on each occasion the foreclosure was handled by Lundberg and his firm, Lundberg & Associates (collectively, the Lundberg defendants). On each occasion, the Russells cured their default and were charged the actual costs of the foreclosure by the Lundberg defendants. The gravamen of the Russells' lawsuit is that the Lundberg defendants acted with their codefendants to illegally inflate these costs, resulting in increased profits for themselves at the expense of the Russells and other similarly situated foreclosees.

¶ 4 In 2002, the Russells filed suit against the Lundberg defendants and various other entities involved in the foreclosure process. These defendants included Rodney Services Co. (Rodney), a property services company allegedly owned by Lundberg's son and operated for the purpose of inflating foreclosure costs; Backman Title Company, Backman Stewart Title Services, Ltd., and Canyon Anderson (collectively the Backman defendants), who provided title reports and trustee sale guarantees to the Lundberg defendants; and ten John Doe defendants. The Russells' suit purported to be a class action on behalf of themselves and those similarly situated.

¶ 5 The Russells' complaint alleged that state and federal law limited the fees that the Lundberg defendants could charge for a foreclosure. In addition to this amount, the Lundberg defendants were permitted to charge foreclosees the actual costs associated with foreclosures, including such items as publishing and recording costs, mailing costs, and the cost of a trustee's sale guarantee. The Russells alleged that the Lundberg defendants used various methods to artificially inflate costs and thereby unlawfully charge foreclosees more than the actual costs of these various services.

¶ 6 The Russells alleged that the Lundberg defendants set up Rodney as a front company for the purpose of inflating foreclosure costs. According to the Russells' allegations, the Lundberg defendants delegated various aspects of the foreclosure process to Rodney. For each service it performed, Rodney charged an administrative fee that was ultimately passed on to the Russells. Aggregated over multiple services for each of thousands of foreclosures performed by the Lundberg defendants, these fees allegedly resulted in the extraction of thousands of dollars in illegally inflated costs.

¶ 7 The Russells also alleged that the Lundberg defendants were involved in illegal kickback schemes with the Backman defendants and the Intermountain Commercial Record (the Record), a private publication specializing in business and legal notices. According to the Russells, the Lundberg defendants would pay the Backman defendants for a trustee's sale guarantee, and would recoup that entire amount from the Russells. Lundberg would then receive money back from the Backman defendants both as a percentage kickback and pursuant to a partial ownership interest in one of the Backman entities. Similarly, the Lundberg defendants would pay the Record, and charge the Russells, $143 for each published notice, but would then receive $30 back from the Record. The Russells alleged that the Lundberg defendants' failure to deduct these kickback amounts from the fees charged to the Russells constituted unlawful overcharging.

¶ 8 The Russells' complaint contained fifteen causes of actions based on these allegations, all of which were asserted against the Lundberg defendants and Rodney, and some of which were asserted against the Backman defendants. In a series of orders beginning in October 2002, the trial court dismissed or granted summary judgment against each of the Russells' claims against every defendant. Based on the dismissal of all of the Russells' claims, the trial court also declined to certify the Russells' action as a class action. The Russells appeal.

ISSUES AND STANDARDS OF REVIEW

¶ 9 "The propriety of a trial court's summary judgment order is a matter of law." *West Valley City v. Martin,* 2004 UT App 327, ¶ 11, 100 P.3d 248. "In deciding whether summary judgment is appropriate, the appellate court reviews whether the trial court erred in applying the relevant law and whether a material fact was in dispute." *Id.*

¶ 10 A trial court's decision on a motion to dismiss presents a question of law that we review for correctness, treating the factual allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiffs. *See Russell/Packard Dev., Inc. v. Carson,* 2003 UT App. 316, ¶ 10, 78 P.3d 616, *aff'd,* 2005 UT 14, 108 P.3d 741.

ANALYSIS

¶ 11 The Russells' complaint states multiple causes of action, but all of their complaints ultimately turn on whether Lundberg charged them more than his actual costs of foreclosure and what duty, if any, Lundberg owed them as a trustee. We agree with the trial court that Lundberg charged the Russells only his actual costs and fees and that he owed the Russells no fiduciary duties. We determine, however, that Lundberg did owe the Russells a general trustee's duty, and reverse and remand this matter for further proceedings as stated herein.

1. Lundberg Charged the Russells Actual Costs and Fees

¶ 12 Many of the Russells' causes of action are based on the allegation that Lundberg charged them more than his "actual costs and fees" of foreclosure. We agree with the trial court that Lundberg only charged the Russells the actual fees that he was charged for the services provided by Rodney and others, and that in doing so Lundberg complied with the "actual cost" requirements of applicable state and federal laws and contract provisions.

¶ 13 The Russells do not allege that Lundberg directly padded the fees and costs of foreclosure. Rather, their accusation is that Lundberg manipulated the provision of third-party services such that the amount that he was charged on paper was greater than the net amount he ultimately paid. The Russells allege that Lundberg employed Rodney to perform tasks that Lundberg could have performed himself at no extra cost, and that Rodney's involvement in the process resulted in the creation of increased administration costs that were subsequently returned to Lundberg or his family through their interests in Rodney. As to the Backman defendants and the Record, the Russells allege that the costs of services charged to Lundberg must be reduced pro rata to reflect commissions paid to the Lundberg defendants because of the volume of business they provided.

¶ 14 As to Lundberg's use of Rodney, the Russells have provided no authority for the proposition that a trustee is precluded from engaging a third party to perform activities attendant to a foreclosure, nor is this court aware of any. To the contrary, it appears to be accepted practice for trustees to use third parties to perform foreclosure activities. In this case, the Russells' complaint implicitly approves Lundberg's use of the title company and publication services provided by the Backman defendants and the Record. Like the Backman defendants and the Record, Rodney is entitled to charge what it sees fit for its services and Lundberg is entitled to treat those charges as his actual costs.

¶ 15 Similarly, the Russells have not established that the actual cost of a trustees sale guarantee from the Backman defendants, or publication of notice in the Record, must reflect a discount for commissions paid back to the Lundberg defendants based on their volume of business. As the trial court noted, the commissions were paid periodically and had no correlation to any particular foreclosure, and the Russells paid no more for these services through Lundberg than they would have had they purchased these services directly.

¶ 16 In sum, the "actual costs and fees" requirement cannot be interpreted as requiring a trustee to personally perform all services related to foreclosure, to refrain from engaging third-party service providers, or to

seek out and employ the lowest cost options available. Neither can it be interpreted as requiring a discount to reflect volume of business commissions that the trustee may be able to obtain from third-party providers. On its face, the Russells' complaint alleges that Lundberg only charged them what Rodney, the Backman defendants, and the Record charged him for any particular service. Accordingly, the Russells have identified no breach of the actual costs and fees requirement under federal or state law or the contract provisions contained in their trust deed.

### 2. Lundberg's Duty to the Russells

¶ 17 Lundberg's alleged actions do not violate any express statutory or contract provisions identified by the Russells. However, those actions may still support some liability against Lundberg if they amount to a breach of duty owed to the Russells by Lundberg. Accordingly, we now turn to identifying the nature and scope of duty owed by Lundberg to the Russells as a trustee.

### A. No Fiduciary Duty Between the Russells and Lundberg

¶ 18 The Russells allege that Lundberg owed them a fiduciary duty as the trustee of their trust deed. As a fiduciary, Lundberg would have strict obligations to act in the Russells' interests, and the practices alleged by the Russells might very well constitute a breach of that duty. *See First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1333 (Utah 1990) (" 'A fiduciary is a person with a duty to act primarily for the benefit of another.'" (citation omitted)). We conclude, however, that Lundberg did not owe the Russells a fiduciary duty in this matter.

¶ 19 A trustee's primary obligation is to assure the payment of the debt secured by the trust deed. *See Five F, L.L.C. v. Heritage Sav. Bank*, 2003 UT App 373, ¶¶ 13–15, 81 P.3d 105. In certain circumstances, however "it is possible that the trustee is bound by a fiduciary duty to act in the interest of the trustor." *First Sec. Bank of Utah, N.A. v. Banberry Crossing*, 780 P.2d 1253, 1256 (Utah 1989). "Such circumstances are as follows: (1) 'where a trustor reposes its trust or confidence in the trustee and relies on the trustee's guidance,' (2) 'where the trustee could exercise extraordinary influence over the trustor,' and (3) 'where the trustee stands in a dominant position to the trustor.'" *Five F, L.L.C.*, 2003 UT App 373 at ¶ 17, 81 P.3d 105 (quoting *Banberry Crossing*, 780 P.2d at 1256). Clearly implicit in this test is the understanding that a fiduciary duty arises not from the mere existence of the trustor-trustee relationship, but rather from facts evidencing a confidential relationship above and beyond that ordinarily found between trustor and trustee. *See id.; see also Blodgett v. Martsch*, 590 P.2d 298, 302 (Utah 1978).

¶ 20 The Russells assert on appeal that Lundberg owed them fiduciary duties under the *Banberry Crossing* test because he "clearly stood in a dominant position to [them]," because he "exercised extraordinary influence over them as he held the future ownership of their home in his hands," and because they "relied on his guidance as to the amount of costs that they had to legally pay in order to stop the foreclosures." In our opinion, these characterizations vastly overstate Lundberg's powers and functions as a trustee and do not constitute a sound basis from which we can find a fiduciary duty under *Banberry Crossing*. Further, the Russells' arguments would apply equally to any other person acting as a foreclosing trustee, and therefore necessarily imply a fiduciary duty from "the mere utilization of [a] trust deed in the loan transaction," a result that has previously been rejected by the courts. *Blodgett*, 590 P.2d at 302; *see also Banberry Crossing*, 780 P.2d at 1256.

¶ 21 We determine that the Russells have not alleged any facts that would take their relationship with Lundberg outside of the ordinary trustor-trustee relationship. This trustor-trustee relationship, standing alone, is not the kind of special relationship that gives rise to a fiduciary duty under *Blodgett* or *Banberry Crossing*. Accordingly, the trial court correctly determined that Lundberg did not owe the Russells a fiduciary duty.

### B. Lundberg's Duty of Good Faith and Reasonableness

¶ 22 Even though Lundberg did not owe the Russells a fiduciary duty, we cannot agree with the trial court that Lundberg owed the Russells no duty whatsoever arising out of the trustor-trustee relationship. While a trustee's primary duty and obligation is to the beneficiary of the trust, " 'the trustee's duty to the beneficiary does not imply that the trustee may ignore the trustor's rights and interests.' " *Five F, L.L.C.,* 2003 UT App at ¶ 17 (quoting *Banberry Crossing,* 780 P.2d at 1256). Rather, a trustee has a duty " 'to act with reasonable diligence and good faith on [the trustor's] behalf consistent with [the trustee's] primary obligation to assure payment of the secured debt.' " *Id.* at ¶ 14 (alterations in original) (quoting *Blodgett,* 590 P.2d at 303).

¶ 23 Here, although the Russells incorrectly characterize Lundberg's duty as fiduciary, they have nevertheless alleged that Lundberg owed them a duty as trustee and that he breached that duty by handling the costs and fees of foreclosure in the manner alleged in the complaint. The Russells also allege, in various portions of their complaint, that the fees and costs charged by Lundberg are "in excess of the customary costs charged in the industry" and are "excessive and unreasonable." These allegations, if proven, could potentially establish a breach of Lundberg's duty as trustee.

¶ 24 Whether or not the trial court would still have granted summary judgment to Lundberg had it employed the correct standard of trustee's duty is a question upon which we will not speculate. Moreover, we are unwilling to make such a determination on the record and arguments presently before us. We therefore reverse the trial court's grant of summary judgment in favor of Lundberg on the issue of breach of his trustee's duty, and remand for further proceedings as to whether Lundberg's foreclosure practices constitute "reasonable diligence and good faith on [the Russells'] behalf." *Id.* (quotations and citations omitted).

### 3. Other Claims and Defendants

¶ 25 As stated above, we reverse and remand for further proceedings on whether Lundberg breached his trustee's duty to the Russells. We affirm the trial court's orders as they apply to all other claims and defendants.

¶ 26 Our determination that Lundberg owed the Russells no fiduciary duty is, of course, fatal to the Russells' breach of fiduciary duty claim. This determination also disposes of the Russells' constructive fraud claim, which requires a fiduciary or confidential relationship as an element. *See Jensen v. IHC Hosps., Inc.,* 944 P.2d 327, 339 (Utah 1997) ("Constructive fraud requires ... a confidential relationship between the parties.").

¶ 27 We have already determined, in agreement with the trial court, that the Russells' complaint did not allege that Lundberg charged them any more than he actually paid for various foreclosure services. This determination is fatal to the majority of the Russells' other claims against the Lundberg defendants. By our reading of the Russells' complaint, their claims for breach of contract, breach of the covenant of good faith and fair dealing, restitution, unjust enrichment, wrongful collection, liability for intended consequences, fraud, and negligent misrepresentation all hinge on the allegation that either the Lundberg defendants' employment of Rodney, or their commission relationships with the Backman defendants and the Record, somehow resulted in charges exceeding the actual costs of foreclosure. We have rejected this interpretation of the facts alleged, and accordingly affirm the trial court's summary judgment orders on these claims.

¶ 28 We affirm the trial court's summary judgment denying the Russells' claim under the Utah Unfair Practices Act, *see* Utah Code Ann. § 13–5–1 to –18 (2001). Although we question the trial court's decision that the Russells did not have standing to bring a claim under the Act, *see* Utah Code Ann. § 13–5–14 ("Any person ... may maintain an action to enjoin a continuance of any act in violation of this chapter, and, if injured by the act, for the recovery of damages."), we agree that the facts alleged do not establish

injury to competition so as to constitute illegal conduct under the Act. *See id.* § 13–5–3(1)(a). If anything, Lundberg's alleged overcharging opened the door to competitors, who could gain an advantage by offering a lower price than that charged by Lundberg. We also note that Lundberg's alleged commission arrangements with the Backman defendants and the Record appear to be expressly approved under the Act. *See id.* § 13–5–3(1)(b)(i) ("Nothing in this chapter shall prevent [price] differentials which make only due allowance for differences in the cost of manufacture, sale, or delivery resulting from the different methods or quantities in which such commodities are to such purchasers sold or delivered.").

■ ¶ 29 We also affirm the trial court's summary judgment on punitive damages. "In Utah, punitive damages are available only upon clear and convincing proof of 'willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and disregard of, the rights of others.'" *Smith v. Fairfax Realty, Inc.,* 2003 UT 41, ¶ 27, 82 P.3d 1064 (quoting Utah Code Ann. § 78–18–1(1)(a) (2002)). In light of Lundberg's limited duty to the Russells, we agree with the trial court that "an assessment of the conduct alleged indicates that the plaintiffs cannot prove the degree of culpability and egregiousness necessary to justify an award of punitive damages."

■ ¶ 30 Finally, we affirm the trial court's summary judgment or dismissal orders as to each of the other defendants in this matter.[1] Neither the Backman defendants nor Rodney owe the Russells any trustee's duty. Further, although we have determined that the bulk of the Russells' al-

legations describe permissible behavior even on the part of Lundberg, we note that the Backman defendants and Rodney are third parties to the Russells' relationship with Lundberg, and as such are somewhat removed from Lundberg's actions. The Russells have presented no authority to the effect that a trustee's duty to act reasonably is anything other than a personal duty, or that third parties dealing with the trustee can be held to the trustee's standard of care. Accordingly, we affirm the trial court's rulings in regard to the other defendants in this matter.

## CONCLUSION

¶ 31 We determine that Lundberg did not owe the Russells a fiduciary duty, but did owe them a general trustee's duty to act reasonably and in good faith. Factual questions may exist as to the reasonableness[2] of Lundberg's actions in determining the costs associated with the Russells' foreclosures. Accordingly, we reverse the trial court's grant of summary judgment on this issue. We affirm the trial court in all other respects.

¶ 32 This matter is affirmed in part and reversed in part, and is hereby remanded to the trial court for further proceedings consistent with this opinion.

¶ 33 WE CONCUR: JAMES Z. DAVIS and NORMAN H. JACKSON, Judges.

---

1. We express no opinion as to whether Lundberg & Associates owes the Russells the same trustee's duty as does Lundberg personally. We also decline to address the Russells' request for class action status. These issues require, or are at least amenable to, further development in the trial court in light of our ruling today.

2. We are aware that the trial court stated in its August 14, 2003 Memorandum Decision that the

Russells "do not contest the reasonableness of Rodney's fee." However, the Russells are entitled to resubmit arguments and evidence to the trial court in light of our clarification of the duties owed by Lundberg in this matter.