**FIRST SECURITY BANK OF UTAH, N.A., and First Security Financial, Plaintiffs,**

v.

**BANBERRY CROSSING, a Utah partnership; Banberry Development Corporation, a Utah corporation; Scandia Investment Company, a Utah general partnership; Hillcrest Investment Company, a general partnership; Sidney M. Horman; Charles H. Horman; M. Gordon Johnson; Gregory P. Nelson; Victor L. Fowler; Jack J. Johnson; John E. Price; and Western Woodlands, Inc., a Utah corporation, Defendants, Third–Party Plaintiffs, and Appellants,·**

v.

**Eugene L. KIMBALL, Defendant and Appellee,**

and

**Keith Garner, Snow, Christensen & Martineau, a partnership, Commonwealth Land Title, Summit County Title Company, and Don Hutchinson, Third–Party Defendants and Appellees.**

No. 20266.

Supreme Court of Utah.

Oct. 3, 1989.

---

1. This statute is presently Utah Code Ann. § 35–1–42(5) (1988).

Jonathan A. Dibble, Salt Lake City, for First Sec.

Edward M. Garrett, Michael A. Katz, Salt Lake City, for Banberry Crossing, Banberry Development Corp., Scandia Investment Co., Hillcrest Investment Co., Sidney M. Horman, Charles H. Horman, and M. Gordon Johnson.

Ronald E. Nehring, Salt Lake City, for Gregory P. Nelson and Victor L. Fowler.

David E. Bean, Layton, for Western Woodlands.

Merlin R. Lybbert, Michael R. Carlston, Salt Lake City, for Eugene L. Kimball.

Malcolm A. Misuraca, James L. Beyers, Santa Rosa, Cal., Craig Cook, Salt Lake City, for Eugene L. Kimball and Keith Garner.

Ray R. Christensen, Phillip S. Ferguson, Salt Lake City, for Snow, Christensen and Martineau.

LeRoy S. Axland, Clark Waddoups, Salt Lake City, for Commonwealth Land Title Co.

Richard D. Burbidge, Stephen B. Mitchell, Salt Lake City, for Summit County Title Co. and Don Hutchinson.

HALL, Chief Justice:

Plaintiffs initiated this action against defendants, claiming that defendants defaulted on various financial obligations owed to plaintiffs arising from a real estate development in Park City, Utah. Plaintiffs sought declaratory relief, a money judgment, foreclosure of its trust deeds, appointment of a receiver, and general equitable relief. Defendants Banberry Crossing and Banberry Development Corporation ("Banberry") filed what has been denominated a cross-claim against Eugene L. Kimball, Keith Garner, and the Salt Lake City law firm of Snow, Christensen & Martineau ("SCM"), alleging breach of trust and slander of title. Pursuant to rule 42(b) of the Utah Rules of Civil Procedure, the trial court tried the cross-claim separately from plaintiffs' action.[1] After presentation of Banberry's case, the court directed a verdict against Banberry and in favor of Kimball, Garner, and SCM. Banberry appeals.

In reviewing a judgment of directed verdict, "[w]e must examine the evidence in the light most favorable to the losing party, and if there is a reasonable basis in the evidence and in the inferences to be drawn therefrom that would support a judgment in favor of the losing party, the directed verdict cannot be sustained."[2] Application of this standard does not disclose error in the court's decision, and we therefore affirm.

In 1980, Kimball sold property in Park City, Utah, to Banberry. As security for payment, Banberry executed a trust deed on the property to Kimball. First Security Bank ("First Security") agreed to provide financing for the development of the property on the condition that Kimball subordinate his interest in the property under the trust deed in favor of First Security.

In 1981 and 1982, Kimball reconveyed to Banberry portions of the property that had been developed by Banberry but were included in the original trust deed. In 1982 and 1983, Banberry failed to make interest and principal payments due Kimball. Kimball hired SCM to either collect the pur-

---

1. The Court considered this appeal, but did not consolidate it, with the appeal of its companion case, *First Security Bank v. Banberry*, No. 870034, argued June 13, 1989.

2. *Management Committee of Graystone Pines v. Graystone Pines, Inc.*, 652 P.2d 896, 898 (Utah 1982) (footnote omitted).

chase price money due or foreclose on the trust deed.

In 1983, David Castleton, an attorney at SCM, was substituted as trustee under the trust deed. He caused a notice of default to be recorded describing the entire tract of land recorded in the trust deed, including the portions of the property reconveyed to Banberry. Castleton had this notice mailed to Banberry and purchasers of condominiums on the reconveyed developed tracts. Sidney Horman, an officer at Banberry, complained that the description in the notice of default was faulty and slandered Banberry's title. Castleton prepared and recorded an amended notice of default that excluded the reconveyed property. Banberry claims in part that recording and mailing the initial notice of default to condominium owners caused pending sales of the units to fail. In appealing the court's decision, it contends that the trustee breached a fiduciary duty owed to Banberry, that appellees slandered Banberry's title, and that the trial court erred when it excluded testimony of Banberry's expert witnesses.

The first issue to be addressed is whether the trustee, Castleton, breached a fiduciary duty owed to the trustor, Banberry.

A trust deed is

[a] species of mortgage given to a trustee for the purpose of securing a numerous class of creditors ... with power to foreclose and sell on failure of the payment of their bonds, notes, or other claims. In some of the states, a trust deed or deed of trust is a security resembling a mortgage, being a conveyance of lands to trustees to secure the payment of a debt, with a power of sale upon default, and upon a trustee to apply the net proceeds to paying the debt and to turn over the surplus to the grantor.[3] Likewise, Utah Code Ann. § 57-1-19(3) (Cum.Supp.1989) defines a trust deed as a "deed ... conveying real property to a trustee in trust to secure the performance of an obligation of the trustor or other person named in the deed to a beneficiary."[4]

▮ A trust deed is similar to a mortgage in that it is given as security for the performance of an obligation. However, a trust deed is a conveyance by which title to the trust property passes to the trustee.[5] Upon default, the trustee has power to sell the property to satisfy the trustor's debt to the beneficiary.

▮ The existence of the trust itself creates a duty between the trustee and the beneficiary.[6] But the trustee's duty to the beneficiary does not imply that the trustee may ignore the trustor's rights and interests. Obviously, a trust deed trustee may not scheme to defraud a trustor.[7] And in cases where a trustor reposes its trust or confidence in the trustee and relies on the trustee's guidance or where the trustee could exercise extraordinary influence over the trustor or where the trustee stands in a dominant position to the trustor, it is possible that the trustee is bound by a fiduciary duty to act in the interest of the trustor.[8] In short, the existence of a duty between the trustee and the trustor may be implied by the factual situation of a particular case.[9] In this instance, however, there is no evidence of fraud or a relationship that would create a fiduciary duty. The trustee did not breach a duty to the trustor.

▮ Next to be determined is whether appellees slandered Banberry's title. To prove slander of title, a claimant must prove that (1) there was a publication of a

---

**3.** *Black's Law Dictionary,* at 1356 (5th ed.1979).

**4.** *See also* Utah Code Ann. § 57-1-20 (1986) ("Transfers in trust of real property may be made to secure the performance of an obligation of the trustor or any other person named in the trust deed to a beneficiary.").

**5.** *General Glass Corp. v. Mast Constr. Co.,* 766 P.2d 429, 432 (Utah Ct.App.1988).

**6.** *Denison State Bank v. Madeira,* 230 Kan. 684, 691, 640 P.2d 1235, 1241 (1982).

**7.** *Blodgett v. Martsch,* 590 P.2d 298, 302 (Utah 1978).

**8.** *Id.* at 301-03.

**9.** *Denison,* 230 Kan. at 691-93, 640 P.2d at 1241-42.

slanderous statement disparaging claimant's title, (2) the statement was false, (3) the statement was made with malice, and (4) the statement caused actual or special damages.[10] "A slanderous statement is one that is derogatory or injurious to the legal validity of an owner's title or to his or her right to sell or hypothecate the property...."[11]

Appellees concede that a notice of default was published disparaging Banberry's title to the property in Park City. However, they claim that if the notice was false, its falsity was due to an inadvertent error that is not actionable. In the same vein, they deny any malice and they assert that Banberry failed to prove actual or special damages.

Banberry contends, on the other hand, that the original notice of default was false since its description included property that had been reconveyed to Banberry. It also alleges that the amount of indebtedness purported to be in default was incorrect. Banberry bases its claims of malice on a phone call from Castleton to Horman, a letter from SCM to First Security Bank, and the fact that Castleton recorded and then mailed a false notice of default to purchasers of property that had been reconveyed to Banberry.

■ The original notice of default erroneously described the property in default. This apparently came about by simply copying a verbatim description in the recorded deed of trust without deleting the portions previously reconveyed. A published false statement, however, does not constitute slander of title without the element of malice. Malice may be affirmatively proven or implied. Affirmative proof requires a showing that the wrong was done with an intent to injure, vex, or annoy.[12]

Malice may be implied where a party knowingly and wrongfully records or publishes something untrue or spurious or which gives a false or misleading impression adverse to one's title under circumstances that it should reasonably foresee might result in damage to the owner of the property.[13] While preparation of the original notice of default may have been less than proficient, there is a difference between poor performance and malice.[14]

■ None of Banberry's cited examples of malice constitute malice toward Banberry. The phone call from Castleton to Horman and the letter from SCM to First Security Bank did not malign Banberry; both assayed Horman. Although Castleton published a false notice of default, when he became aware that the notice was false, he amended it to eliminate descriptions of the reconveyed property. It appears that filing the false notice was inadvertent rather than calculated. We find no reasonable basis in the evidence to infer that appellees acted maliciously. For this reason alone, Banberry's claim fails.

■ Additionally, while Banberry may have proved presumed or general damages, that is not enough. A slander of title action requires proof of actual or special damages.[15]

The special damage rule requires the plaintiff to establish pecuniary loss that has been realized or liquidated, as in the case of specific lost sales. This means that general, implied or presumed damages of the kind formerly available in cases of personal defamation are not sufficient as a ground for recovery in a disparagement claim....[16]

Banberry did not establish that its failure to sell condominium units on the recon-

**10.** *Bass v. Planned Management Servs., Inc.,* 761 P.2d 566, 568 (Utah 1988), and cases cited therein.

**11.** *Id.*

**12.** *Jack B. Parson Cos. v. Nield,* 751 P.2d 1131, 1134 (Utah 1988).

**13.** *Howarth v. Ostergaard,* 30 Utah 2d 183, at 185, 515 P.2d 442, at 444 (1973).

**14.** *See Hicks v. Earley,* 235 Ark. 251, 256, 357 S.W.2d 647, 650 (1962).

**15.** *Bass,* 761 P.2d at 568, and cases cited therein.

**16.** W. Keeton, *Prosser and Keeton on the Law of Torts,* at 971 (5th ed.1984) (footnotes omitted).

veyed developed tracts was a result of appellees' publishing the false notice of default. Rather, the evidence indicates that at least one unit was sold after the original notice was filed. Other sales seem to have been lost, but the reason for the losses was never sufficiently established. Banberry claims attorney fees as special damages, but in *Bass v. Planned Management Services*,[17] this Court held that when "attorney fees were not incurred to clear title or to undo any harm created by whatever slander of title occurred, there [are] no special damages."[18] Banberry did not incur attorney fees to clear its title or undo harm caused by the original notice of default and therefore did not establish special damages.

The remaining issue for determination is whether the trial court properly excluded the testimony of Banberry's expert witnesses. Banberry offered testimony of two specialists in real estate law to determine a question of fact: What is the standard of care used by attorneys in the community in preparing a notice of default, and did Castleton breach that standard? The question before the court, however, involved a question of law: What is the legal duty a trustee owes a trustor, and did Castleton breach that duty? Questions of law are to be determined by the court. Based upon the court's correct determination regarding the question of law, we find no error in its subsequent exclusion of the experts' testimony.

Affirmed.

HOWE, Associate C.J., and DURHAM and ZIMMERMAN, JJ., concur.

STEWART, J., having disqualified himself, does not participate herein.

---

17. 761 P.2d 566.

18. *Id.* at 569.