2003 UT App 373

**FIVE F, L.L.C., Plaintiff and Appellant,**

v.

**HERITAGE SAVINGS BANK,**
**Defendant and Appellee.**

**No. 20020088–CA.**

Court of Appeals of Utah.

Nov. 6, 2003.

Rehearing Denied Dec. 9, 2003.

Brian W. Steffensen, Steffensen Law Office, Salt Lake City, for Appellant.

James S. Jardine, Elaina M. Maragakis, Brent D. Wride, Ray Quinney & Nebeker, and George W. Pratt, Jones Waldo Holbrook & McDonough, Salt Lake City, for Appellee.

Daniel W. Anderson, Fabian & Clendenin, Salt Lake City, for Amicus Curiae Utah Bankers Association.

Before Judges JACKSON, BENCH, and GREENWOOD.

OPINION

BENCH, Judge:

¶ 1 Five F, L.L.C. (Five F) appeals from a final judgment granting a directed verdict in favor of Heritage Savings Bank (Heritage). The trial court determined, "under the facts of [the] case and as a matter of law," that Heritage owed Five F a fiduciary duty. The

court then found that, despite such a duty, Heritage could not be held liable if it fulfilled its obligations under the terms of the parties' trust deed and adhered to the requirements of Utah's trust deed statute. *See* Utah Code Ann. §§ 57–1–19 to –29 (2000). The court also determined that Five F's claims for unjust enrichment and for breach of the implied covenant of good faith and fair dealing did not defeat the directed verdict. We hold that Heritage's fiduciary duty did not require it to do more than follow the requirements of the trust deed and statute. We also find that Five F's claims for unjust enrichment and breach of the implied covenant of good faith and fair dealing are not viable in this instance. We therefore affirm.

## BACKGROUND

¶ 2 Five F entered into a purchase agreement for forty-six acres of raw land in St. George, Utah for a price of $4.7 million. Five F agreed to pay earnest money of $10,000 down and then five monthly payments of $10,000. Thereafter, Five F was to pay $1,114,000 on September 15, 1996, and approximately $1 million in annual payments until the purchase price was paid in full. If Five F failed to make the September 15 payment, then it would forfeit the $60,000 paid as earnest money.

¶ 3 In late August 1996, Five F approached Heritage for a $1.2 million loan in order to make the September 15 payment. As proposed collateral for the loan, Five F offered a 10.44 acre parcel from the forty-six acres. Before making the loan, Heritage ordered an appraisal of the parcel. Although the appraisal came in at $1,650,000, Heritage refused to approve the loan without additional collateral. As additional collateral, Five F offered two four-plexes, each appraised at $306,000.

¶ 4 Five F executed a promissory note for the $1.2 million loan secured by a Trust Deed With Assignment of Rents on the parcel and the four-plexes. Under the note, Five F would make payments of $10,250 on November 1, 1996 and December 1, 1996, with the balance due on December 31, 1996. Under the trust deed, Heritage was the beneficiary and Five F was the trustor. As permitted by statute, Heritage also became the trustee. *See* Utah Code Ann. § 57–1–21(2) (2000).

¶ 5 Five F failed to pay off the note by December 31. Before Heritage could proceed to a foreclosure sale, Five F filed a Chapter 11 bankruptcy petition. The Chapter 11 plan proposed by Five F provided that if certain conditions were not met, then Heritage could continue its foreclosure proceedings. When those conditions were not met, Heritage noticed the foreclosure sale of the 10.44 acre parcel.

¶ 6 In accordance with the trust deed statute, Heritage published the notice of sale. Three months before the sale, Heritage ordered another appraisal of the parcel, which indicated the parcel was worth $1,380,000.[1]

¶ 7 Heritage's attorney conducted the foreclosure sale of the parcel. At the time of the sale, Heritage calculated that the total amount due and owing under the note (including costs and attorney fees) was $1,314,685.33. Heritage bid $1,090,000 for the parcel. As the only bidder, and thus the high bidder, Heritage obtained title to the parcel. The proceeds of the sale were first applied to the foreclosure costs and then to the outstanding debt, leaving a balance owing on the note of approximately $229,000.

¶ 8 Heritage then noticed the foreclosure sale of one of the two four-plexes. Five F sought to enjoin that sale by filing a motion for a preliminary injunction, which the trial court denied. Five F then filed an Emergency Motion for Temporary Stay with the Utah Supreme Court. This motion was also denied. Accordingly, the foreclosure sale of the four-plex continued. At the sale, Heritage again entered the high, and only, bid of $210,000 and acquired title to the four-plex.

¶ 9 Thereafter, Five F filed suit in district court. Five F asserted claims for breach of fiduciary duty, breach of contract, and unjust enrichment. The court denied Heritage's motion for summary judgment and the matter went to trial before a jury.

---

1. At some point prior to this, the parcel had been appraised at $1,825,000.

¶ 10 On the third day of trial, the trial court made a preliminary ruling that Heritage owed Five F a fiduciary duty by assuming the role of both trustee and beneficiary. Then, on the fourth and last day of trial, before submitting the case to the jury, the trial court ruled that neither the fiduciary duty owed by a trustee/beneficiary to a trustor, nor the implied covenant of good faith and fair dealing owed by a bank to a borrower, could require Heritage to do more than to comply with the provisions of the trust deed and adhere to the trust deed statute. Consequently, the trial court granted Heritage's motion for a directed verdict. Five F appeals.

## ISSUES AND STANDARD OF REVIEW

¶ 11 Five F presents several issues on appeal: breach of fiduciary duty, violation of the implied covenant of good faith and fair dealing, and unjust enrichment. We must decide whether the trial court erred in directing a verdict in favor of Heritage on these issues.

¶ 12 "A trial court is justified in granting a directed verdict only if, examining all evidence in a light most favorable to the non-moving party, there is no competent evidence that would support a verdict in the non-moving party's favor." *Merino v. Albertson's, Inc.*, 1999 UT 14, ¶ 3, 975 P.2d 467. We review a directed verdict under the same standard employed by the trial court. *See id.* (citing *Management Comm. of Graystone Pines Homeowners Ass'n v. Graystone Pines, Inc.*, 652 P.2d 896, 898 (Utah 1982)).

## ANALYSIS

¶ 13 In Utah, " '[t]rust deed' means a deed . . . conveying real property to a trustee in trust to secure the performance of an obligation of the trustor or other person named in the deed to a beneficiary." Utah Code Ann. § 57–1–19(3) (2000). The trustee is the party entrusted with the task of handling the foreclosure procedure in case of default. In this instance, the borrower, Five F, was the trustor, and the lender, Heritage, was the beneficiary. As permitted by statute, Heritage also assumed the role of trustee. *See* Utah Code Ann. § 57–1–21(2) (2000).

¶ 14 "The relationship [that] arises when a borrower secures his loan by trust deed has been the subject of considerable judicial comment." *Blodgett v. Martsch*, 590 P.2d 298, 302 (Utah 1978). In *Blodgett*, our supreme court explained that "[t]he duty of the trustee under a trust deed is greater than the mere obligation to sell the pledged property in accordance with the default provision of the trust deed instrument, it is a duty to treat the trustor fairly and in accordance with a high punctilio of honor." *Id.* The supreme court explained that courts have a duty to closely examine trust deed foreclosures that are questioned because they are far simpler than mortgage foreclosures, which require the assistance of the court. *See id.* A trustee's duty to a trustor is "to act with reasonable diligence and good faith on [the trustor's] behalf consistent with [the trustee's] primary obligation to assure payment of the secured debt." *Id.* at 303.

¶ 15 Pursuant to Utah's trust deed statute, a trustee is given a power of sale "under which the trust property may be sold in the manner hereinafter provided, after a breach of an obligation for which the trust property is conveyed as security." Utah Code Ann. § 57–1–23 (2000).[2] A trustee may not exercise the power of sale until the trustee files a notice of default, waits three months, and gives notice of the sale. *See* Utah Code Ann. § 57–1–24 (2000). As for noticing the sale, the trustee is required to "give written notice of the time and place of sale particularly describing the property to be sold[,]" publish the notice under specific circumstances, post the notice under certain criteria, and hold the sale in a fixed manner. Utah Code Ann. § 57–1–25 (2000). After the sale has been properly noticed, "the trustee . . . sell[s] the property at public auction to the highest

---

**2.** In 2001, this statute was amended to read, "The trustee *who is qualified under Subsection 57–1–21(1)(a)(i) or (iv)* is given the power of sale," thus prohibiting the former practice of allowing "any depository institution" to have the power of sale. Utah Code Ann. § 57–1–23 (Supp.2003) (emphasis added). Therefore, under the current statute, Heritage could not exercise the power of sale.

bidder." Utah Code Ann. § 57–1–27 (2000). "Any person, including the beneficiary or trustee, may bid at the sale." *Id.* If there is only one bid, then it is the highest bid, and the trustee is required to accept it.[3] *See Thomas v. Johnson,* 801 P.2d 186, 189 (Utah Ct.App.1990).

¶ 16 Five F does not allege that Heritage failed to comply with the trust deed statute and admitted as much at trial. As demonstrated above, Heritage fully complied with the requirements of the trust deed statute and its bid, as the only and highest bid, was accepted. Five F alleges that, because of Heritage's fiduciary duty, it was required to do more than to comply with the trust deed and the trust deed statute.

¶ 17 The case of *First Security Bank of Utah, N.A. v. Banberry Crossing,* 780 P.2d 1253 (Utah 1989), discusses the circumstances in which, because of a fiduciary duty, a trustee owes a greater responsibility to a trustor than the trustee normally would. A "trust itself creates a duty between the trustee and the beneficiary. But the trustee's duty to the beneficiary does not imply that the trustee may ignore the trustor's rights and interests." *Id.* at 1256. The court explained that, in certain circumstances, "it is possible that the trustee is bound by a fiduciary duty to act in the interest of the trustor." *Id.* Such circumstances are as follows: (1) "where a trustor reposes its trust or confidence in the trustee and relies on the trustee's guidance," (2) "where the trustee could exercise extraordinary influence over the trustor," and (3) "where the trustee stands in a dominant position to the trustor." *Id.*[4]

¶ 18 In the present case, the trial court did not directly consider the *Banberry Crossing* criteria in determining whether Heritage's fiduciary duty to Five F required Heritage to act in the interest of Five F. The

facts must be evaluated under the *Banberry Crossing* criteria to ascertain whether Heritage's fiduciary duty is actionable in this instance.

¶ 19 *Banberry Crossing* is particularly helpful because it involved the same procedural posture as here—that of a directed verdict. In *Banberry Crossing,* our supreme court determined that a directed verdict was proper under those facts because there was "no evidence of fraud or a relationship that would create a[n actionable] fiduciary duty." *Banberry Crossing,* 780 P.2d at 1256. Likewise here, other than claiming that Heritage had "unilateral discretion" built into the agreement and intimating that Heritage had not dealt fairly with Five F, Five F has not established the existence of any of the *Banberry Crossing* criteria. In fact, Five F admitted that it had not relied on anything Heritage did for advice, that it was "wholly independent from Heritage," and that Heritage had no influence or control over Five F with respect to terminating the negotiations and seeking a loan from somewhere else. Moreover, Five F conceded that it was trying to rush the loan process to meet the September 15 deadline and that Heritage would have given additional time if Five F had requested it.

¶ 20 Clearly, Five F did not put forth sufficient evidence to make the *Banberry Crossing* criteria an issue for trial. Because Five F presented no evidence of a relationship that would create an actionable fiduciary duty under *Banberry Crossing,* the directed verdict was properly granted.

¶ 21 Five F also claims that the trial court incorrectly directed a verdict on the implied covenant of good faith and fair dealing and unjust enrichment claims. The trial court made the following ruling:

---

3. Professor David Thomas, an expert witness for Heritage, explained that, in the absence of a fiduciary duty, the trustee normally accepts the highest bid unless the bid is so low as to "shock the conscience." Professor Thomas opined that, in this instance, Heritage's bid of $1,090,000 for a parcel that had been appraised at anywhere between $1,380,000 and $1,825,000 did not "shock the conscience."

4. The *Banberry Crossing* court cited *Blodgett v. Martsch,* 590 P.2d 298, 302 (Utah 1978), to explain that "[o]bviously, a trust deed trustee may not ... defraud a trustor." *First Security Bank of Utah, N.A. v. Banberry Crossing,* 780 P.2d 1253, 1256 (Utah 1989).

Given the evidence in this case and which this jury would have to consider, the Court is of the opinion that the law does not contemplate that the bank can be found liable to the plaintiff for the breach of fiduciary duty or the breach of the implied covenant of good faith and fair dealing or for unjust enrichment when the bank's conduct is permitted under the law.

¶ 22 The court then directed a verdict in favor of Heritage. As further clarification, the following dialogue, with respect to the unjust enrichment claim, ensued:

MR. HATHAWAY [for Five F]: Your Honor, I take it it [the directed verdict] pertains as well to the unjust enrichment claim.

THE JUDGE: I didn't mention the unjust enrichment claim. We've tried the case as a contract case.

MR. HATHAWAY: Yes.

THE JUDGE: And so I think the unjust enrichment claim would be moot at this point.

MR. HATHAWAY: All right. Thank you.

THE JUDGE: All right. And just so I'm clear, do you disagree with that, either, either side?

MR. JARDINE: No, Your Honor.

MR. HATHAWAY: I just wanted that clarification. Thank you.

■ ¶ 23 We agree with the trial court that Heritage cannot be found liable for breaching the implied covenant of good faith and fair dealing because Heritage acted in strict conformity with both the trust deed and the trust deed statute. Although "every contract is subject to an implied covenant of good faith," *Brehany v. Nordstrom*, 812 P.2d 49, 55 (Utah 1991), here the trust deed statute directly governed the transaction and prescribed the rights and responsibilities of both parties in a fairly detailed manner. In essence, Heritage could not breach the implied covenant because Heritage strictly complied with the statute and the statute outlined the steps needed to ensure good faith and fair dealing. *Cf. Olympus Hills Shopping Ctr. v. Smith's Food & Drug Ctrs.*, 889 P.2d 445, 450 (Utah Ct.App.1994) (finding, in the absence of a statute dictating the behav-

ior of the parties, "parties who retain express power or discretion under a contract can exercise that power or discretion in such a way as to breach the covenant of good faith and fair dealing").

■ ¶ 24 The trial court was also correct in directing a verdict in favor of Heritage on the unjust enrichment claim because Heritage had a legal remedy—breach of contract. There was no dispute that the trust deed was an enforceable contract and the case had been tried as a contract case. *See Wood v. Utah Farm Bureau Ins. Co.*, 2001 UT App 35,¶ 10, 19 P.3d 392 (finding that "recovery under an unjust enrichment theory is available only when 'no enforceable written or oral contract exists' " (citation omitted)). *See also Desert Miriah, Inc. v. B & L Auto, Inc.*, 2000 UT 83,¶ 12, 12 P.3d 580 ("[T]he doctrine of unjust enrichment was specifically developed to address situations 'that did not fit within a particular legal standard but which nonetheless merited judicial intervention' " (citation omitted)); *American Towers Owners Ass'n. v. CCI Mech.*, 930 P.2d 1182, 1193 (Utah 1996) ("The [unjust enrichment] doctrine is designed to provide an equitable remedy where one does not exist at law. In other words, if a legal remedy is available, such as breach of an express contract, the law will not imply the equitable remedy of unjust enrichment"); *Lysenko v. Sawaya*, 1999 UT App 31,¶ 13, 973 P.2d 445 ("[T]he unjust enrichment 'doctrine is designed to provide an equitable remedy [only] where one does not exist at law. In other words, if a legal remedy is available ... the law will not imply the equitable remedy of unjust enrichment' " (second and third alterations in original) (citation omitted)).

## CONCLUSION

¶ 25 Five F presented no evidence of an actionable fiduciary duty under the *Banberry Crossing* criteria. Heritage complied with the terms of the trust deed and Utah's trust deed statute. The trial court was correct in granting a directed verdict in favor of Heritage. We therefore affirm.

¶26 WE CONCUR: NORMAN H. JACKSON, Presiding Judge, and PAMELA T. GREENWOOD, Judge.