2008 UT App 114

**Leigh YOUNG aka Leigh Hardy,
Plaintiff and Appellant,**

v.

**FIRE INSURANCE EXCHANGE,
Defendant and Appellee.**

No. 20070279–CA.

Court of Appeals of Utah.

April 3, 2008.

Budge W. Call, Salt Lake City, for Appellant.

Barbara L. Maw, Park City, for Appellee.

Before GREENWOOD, P.J., THORNE, Associate P.J., and BILLINGS, J.

## OPINION

GREENWOOD, Presiding Judge:

¶ 1 Appellant Leigh Young appeals the trial court's order granting summary judgment on her bad faith claim in favor of Fire Insurance Exchange (FIE). Young also appeals the trial court's grant of FIE's motion for a directed verdict, claiming that (1) she established a prima facie case of FIE's liability, and (2) expert testimony was not required to establish her prima facie case. Finally, Young asserts that the trial court erred in refusing to allow Young's expert to testify.[1]

¶ 2 We affirm in part and reverse and remand in part.

## BACKGROUND

¶ 3 In the early morning hours of July 26, 2001, Young's home was damaged by a fire. Young filed a claim with FIE for property and structural damage and also submitted a claim for living expenses, which FIE paid on a repeating basis. After conducting an investigation into the cause of the fire, FIE stopped paying Young's living expenses and denied her claim for damages, concluding that the fire was the result of arson.

¶ 4 Young then filed a complaint alleging breach of contract and bad faith.[2] At the close of discovery, FIE filed a Motion for Partial Summary Judgment, arguing, among other things, that the bad faith claim was "fairly debatable" and therefore, appropriate for summary judgment. The trial court agreed. Young filed a cross-motion for summary judgment on her breach of contract claim, which the trial court denied, concluding that there were issues of fact for the jury, thus precluding summary judgment. Specifically, the court stated that to deny coverage to an insured, the insurer must establish "(1) that the fire was incendiary in nature, (2) the insured had a financial motive for setting the fire, and (3) unexplained surrounding circumstantial evidence implicated the suspect." The court further concluded that there were disputed issues of material fact surrounding these inquiries, and therefore, summary judgment was inappropriate.

¶ 5 The case was scheduled for an eight-day jury trial, beginning Tuesday, November 28, 2006. Prior to trial, Young designated Fred King, a fire investigator from Denver, Colorado, as a cause and origin expert. King completed a report stating that the fire could have been started by a number of sources, but that "there is no compelling evidence in the fire debris to indicate arson.... No evidence has been demonstrated that links the insured to the act of arson and or being complicit in any way, if in fact arson could be proven." King also concluded that there were signs indicating that the fire may have been a "classic mattress fire," and that it was a "flash over" fire that may have originated on the floor or in a mattress or overstuffed furniture. Although King was originally designated as an expert for Young's case-in-chief, during trial, Young designated King as a rebuttal witness.

¶ 6 On the first day of trial, Young testified about the circumstances surrounding the fire and the resulting damages. She stated that she was not at home on the evening of the fire, but rather, was staying at a local hotel that her brother managed. Young also testified that she first learned of the fire while she was at the hotel and that she was shocked upon seeing the damage. She also said that she had a policy with FIE, that the premiums for the policy were paid and current at the time of the fire, and that for six months after the fire, FIE paid her living expenses until it declined further coverage

---

1. Because our resolution of these issues is dispositive, we decline to address Young's remaining arguments on appeal.

2. This was actually the second and final amended complaint.

based on its determination that Young had intentionally set or arranged for the fire. The trial court interrupted Young's testimony several times and would not allow her to respond to some of her counsel's questions.

¶ 7 On cross-examination, Young testified that she received $300 a month from social security disability and that her current husband had no income. She also stated that she had liens and judgments against her, and that on the day of the fire, she had an appointment to meet with Craig Weinheimer, a health department representative who was investigating the home on a referral from the police department.

¶ 8 Young called one more witness on the first day of trial, Vaughan Bradley, who prepared an estimate of the cost to repair Young's home. Shortly after Bradley began his testimony, the trial court broke in, stating: "I think the essence of where you're going is to allow cross examination so it would be simpler to ask the man if in his judgment this was reasonable and appropriate and then you can let [FIE's counsel] cross him." As requested, Young's counsel asked that question and FIE objected based on lack of foundation. The court overruled the objection and then asked the witness whether his estimate was reasonable. After receiving Bradley's affirmative answer, the trial court directed FIE to commence its cross-examination.

¶ 9 When FIE was finished cross-examining Bradley, none of Young's other witnesses were available to testify for the day. Young's counsel had not anticipated that they would be needed so soon. In the interest of efficiency, the trial court asked FIE to call its first witness. Thus, on the first day of trial, the jury heard testimony from Scott Beebe, FIE's special investigator, who determined that the fire was the result of arson. Beebe testified as to some of the suspicious facts surrounding the fire, including that Young stayed at a hotel on the evening before the fire occurred, there were liens on the property and judgments against Young, and Young allegedly stated that she was at the house between 1:30 and 2:00 a.m. on the morning of the fire.

¶ 10 The next day, Young resumed presentation of her witnesses. Nathaniel Cook, an adjuster who inventoried Young's losses, testified as to the claimed personal property losses. Brandon Yates, a friend of Young's son, testified that he and Young's son and other friends were at the house the night before the fire, smoking marijuana and playing video games on a mattress in the basement—the room where the fire started—and that he and his friends had several candles burning in the room. Yates also testified that three to six months after the fire, he told Young he had been at her house on the evening of the fire. Yates stated that nobody from the fire department or insurance company ever contacted him.

¶ 11 Timothy Hardy, Young's son, essentially reiterated Yates's testimony. Hardy also testified that when an investigator from the fire department asked him if he was at the house on the night before the fire, he denied it. Hardy also said he could not remember when he told his mother about having been at the house the night before the fire. On cross-examination, Hardy confirmed prior deposition testimony in which he first stated that he was at the home two nights before the fire, not the night before the fire, and later said that he was there the night before the fire, but he was uncertain of the exact date. Grant Michael Sumsion and Janet Sherwood also testified briefly. Sumsion is an attorney who helped Young prepare to give a statement to FIE. Sherwood, Young's friend, testified about some alleged remodeling going on in the home.

¶ 12 Young also presented Chris Johnson, an electrician who testified that the wires in an outlet in the room where the fire started were melted together. Prior to taking Johnson's testimony, the court commented that it was unhappy with extending the trial to accommodate witnesses. When Young's counsel stated that his expert would be in court on Friday, the trial court said, "We don't have a trial Friday morning. I've got a criminal calendar Friday morning." Trial, however, was scheduled to last for eight days, and both parties' experts were traveling from out of state. After Johnson's testimony, the court asked, "Now Mr. Call, sub-

ject to the last witness you have, [cause and origin expert Fred King,] you rest. Is that correct?" Young's counsel affirmed, and the trial court asked FIE's counsel to proceed.

¶ 13 FIE then proceeded with its case, presenting Craig Weinheimer, a witness from the health department, who testified that he had visited Young's house prior to the fire because of a referral from the police department. He said that the house was in shambles, there were belongings everywhere, and the house reeked of animal waste and garbage. On cross-examination, Weinheimer testified that he examined the home for about five minutes through a screen door.

¶ 14 A cause and origin investigator from the fire department, Richard Lyman, testified that the fire likely started in the center of the room because this is where an accelerant dog picked up "some type of accelerant," there was no "legitimate source of ignition," and he "could not determine any kind of accidental cause." Lyman also testified that he did not notice any candles or video game equipment in the center of the room. On cross-examination, Lyman admitted that the fire could have started in a mattress, that the mattress was removed when the dog examined the house, and that the fire could have been a flashover fire. Young also pointed out several gaps in Lyman's report including: (1) Lyman determined that what he originally thought was a car transmission with gasoline on it in the center of the room was actually a computer part or a television tube, (2) Lyman did not examine the appliances in the room, an extension cord, or the circuit breaker box, and (3) Lyman failed to interview Young's son. Ultimately, Lyman stated that he had concluded that the fire was deliberately set because he could not find any accidental source. FIE also called Rex Nelson, the accelerant dog's trainer and a cause and origin expert. Nelson testified that the dog found a potential accelerant in the middle of the room, which Nelson thought was a transmission filter, and that the mattress was removed before the dog searched the room.

¶ 15 At the conclusion of the second day of trial, the trial court inquired as to each party's expert witnesses. FIE's counsel stated that his witnesses were out of state and

therefore could not appear until the next morning. The trial court, presumably wanting to move things along, stated, "[T]his evidence is going to finish tomorrow, or else the case will be dismissed, folks." FIE then inquired about moving for a directed verdict: "Question? Has [Young] rested this case where I can make a motion for direct[ed] ... verdict or not?" To which the court responded, "[O]f course he hasn't[ b]ecause he hasn't got all of his witnesses here." FIE then argued that Young's expert, King, was a rebuttal witness and if FIE did not present its expert, Young was not entitled to present King. Court adjourned until the next morning, when the trial judge addressed FIE's motion for a directed verdict.

¶ 16 At the hearing the next day, FIE again argued that King was a rebuttal witness and FIE was not going to call an expert to testify. FIE also argued that it would be improper rebuttal to allow King to rebut Lyman's cause and origin testimony. Further, FIE asserted that because Young did not present an expert witness in her case-in-chief, FIE was "entitled to a directed verdict because, right now, this fire was intentionally set." Young disagreed, stating that King was designated as part of Young's case-in-chief, and furthermore, King was also entitled to rebut Lyman's testimony. Further, Young asserted that FIE had already taken King's deposition and reviewed his report so there was no prejudice in allowing him to testify. Young also argued that it had met its burden at the directed verdict stage and that FIE had the burden of proving arson by a preponderance of the evidence. Finally, Young argued that directed verdict was inappropriate because "the jury can still determine whether or not [Young] set the fire.... [A]rson involves more than just a deliberately set fire. It involves whether she had motive to set it and whether there's circumstantial evidence indicating that she ... had set the fire."

¶ 17 Ruling from the bench, the trial court granted FIE's motion for a directed verdict, stating:

The essential issue here ... is that the plaintiff is claiming wrongful denial of pay-

ment under the policy. This is, after all, a breach of contract case....

Now, as an essential aspect of that claim, the burden then falls upon the plaintiff to establish wrongful denial. And by virtue of that, it is upon the plaintiff to establish that the fire was accidental and, indeed was not intentionally set. Otherwise of course, all that is being presented here is allowing for speculation as to what occurred. And as part of the plaintiff's case in chief, the plaintiff must establish that the fire was not intentionally set and, therefore, the denial of the claim was improper. And that the plaintiff has not done. The plaintiff has rested without presenting expert testimony with regard to cause and origin.

The court also ruled that King was designated as a rebuttal witness, and that Young "has failed to establish a sufficient basis upon which to submit the matter to the jury." Thus, the court concluded that "the motion to dismiss under Rule 41(b), a directed verdict[,] is appropriate and it is herewith granted." [3]

¶ 18 Young objected to the judgment on grounds that rule 41(b) was inapplicable and King was not merely a rebuttal witness, but rather, was testifying in Young's case-in-chief and was prepared and ready to testify. Young also filed a motion for a new trial, which a different judge denied. Young appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 19 Young first argues that the trial court erred in granting partial summary judgment on her bad faith claim. Summary judgment is only appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(c). "The question of whether a trial court properly granted summary judgment is a question of law, which we review for correctness. Furthermore, when reviewing a grant of summary judgment, we recite the disputed facts in a light most favorable to the nonmoving party." *Begaye v. Big D Constr. Corp.*, 2008 UT 4, ¶ 5, 178 P.3d 343 (citation omitted).

¶ 20 Young next asserts that the trial court erred in granting FIE's motion for a directed verdict because, among other things, Young established a prima facie case of liability and the trial court incorrectly determined that Young had the burden to put on expert testimony to establish that the fire was not accidental. " 'A trial court is justified in granting a directed verdict only if, examining all evidence in a light most favorable to the non-moving party, there is no competent evidence that would support a verdict in the non-moving party's favor.' " *Carlson Distrib. Co. v. Salt Lake Brewing Co.*, 2004 UT App 227, ¶ 13, 95 P.3d 1171 (quoting *Five F, LLC v. Heritage Sav. Bank*, 2003 UT App 373, ¶ 12, 81 P.3d 105). "Where there is any evidence that raises a question of material fact, no matter how improbable the evidence may appear, judgment as a matter of law is improper." *Kleinert v. Kimball Elevator Co.*, 905 P.2d 297, 299 (Utah Ct.App.1995).

¶ 21 Finally, Young challenges the trial court's refusal to allow her expert to testify. When determining whether to allow expert testimony, the trial court must consider if "there is a sufficient foundation for the expert's opinion. 'The trial court is allowed considerable latitude of discretion in the admissibility of expert testimony, and in the absence of a clear showing of abuse, this court will not reverse.' " *State v. Pendergrass*, 803 P.2d 1261, 1265 (Utah Ct.App. 1990) (quoting *Lamb v. Bangart*, 525 P.2d 602, 607–08 (Utah 1974)).

## ANALYSIS

### I. Partial Summary Judgment Was Proper [4]

¶ 22 Young challenges the trial court's grant of FIE's motion for partial

---

**3.** Rule 41 of the Utah Rules of Civil Procedure, which applies to bench trials, was inapplicable in this jury trial case. *See* Utah R. Civ. P. 41(b). Thus, in a subsequent order, the court corrected

itself, indicating that the dismissal was pursuant to rule 50(a). *See id.* R. 50(a).

**4.** FIE, citing *Jensen v. Intermountain Power Agency*, 1999 UT 10, ¶¶ 6–9, 977 P.2d 474, argues that

summary judgment on Young's bad faith claim. When an insurer receives an insured's claim for benefits, the insurer must respond reasonably and objectively, it "must 'diligently investigate the facts ..., fairly evaluate the claim, and ... act promptly and reasonably in rejecting or settling the claim.'" Billings v. Union Bankers Ins. Co., 918 P.2d 461, 465 (Utah 1996) (omissions in original) (quoting Beck v. Farmers Ins. Exch., 701 P.2d 795, 801 (Utah 1985)). The prevailing concern in this context is that the insurer acts reasonably when dealing with its insureds. See id. In keeping with this requirement, however, "when an insured's claim is fairly debatable, the insurer is entitled to debate it and cannot be held to have breached the implied covenant if it chooses to do so." Id. "[I]f the evidence presented creates a factual issue as to the claim's validity, there exists a debatable reason for denial, ... eliminating the bad faith claim." Prince v. Bear River Mut. Ins. Co., 2002 UT 68, ¶ 34, 56 P.3d 524 (omission in original) (internal quotation marks omitted). Thus, summary judgment was appropriate on Young's bad faith claim if FIE established a fairly debatable defense to the claim for coverage under the policy. See id. We review the trial court's conclusion on this issue as a question of law. See id. ¶ 33. However, because the trial court's determination is steeped heavily in facts, we "grant the trial court's conclusion some deference." Id. (internal quotation marks omitted).

¶ 23 FIE moved for partial summary judgment at the close of discovery. At the time the trial court ruled on the motion, it considered the following evidence: (1) reports from two cause and origin experts who determined that the fire was intentionally set; (2) testimony that Young had allegedly admitted to FIE that she was home the

morning the fire was set and her neighbor's statement that he had seen Young's husband's vehicle at the house that same morning; (3) testimony that Young and her husband were staying in a hotel the night of the fire, the dogs were in a kennel outside instead of inside where they were normally kept, the home was in an "uninhabitable condition," and "in all probability, it would have been condemned" and her daughter would have been taken into protective custody; (4) testimony that Young was in financial distress and had failed to comply with requests from the department of health to meet with its representative; and (5) a report from an investigator indicating that an accelerant was discovered at the scene of the fire. Because this evidence "creates a factual issue as to the claim's validity," Prince, 2002 UT 68, ¶ 34, 56 P.3d 524 (internal quotation marks omitted), the trial court did not err in granting FIE's motion for partial summary judgment.

## II. Young Established a Prima Facie Case of Liability

¶ 24 Young next argues that the trial court erred in granting FIE's motion for a directed verdict because she established a prima facie case of liability. This argument raises two issues: (1) the quantum of evidence required to establish a prima facie case of liability, and (2) whether expert testimony is necessary to survive a motion for a directed verdict in this particular context.

## 1. Young Was Required to Provide Evidence that the Fire Was a Covered Loss

¶ 25 Young first asserts that " '[t]he issuance of the policy and the payment of premiums establishes prima facie the liability of the insurer.'" Fox v. Allstate Ins. Co., 22 Utah 2d 383, 453 P.2d 701, 706 (1969) (Callis-

this court should not entertain Young's argument on this issue because it was not designated in the notice of appeal. We disagree. This issue was sufficiently addressed because the notice of appeal states that Young is appealing the directed verdict and "all preceding or interim orders." Moreover, the holding in Jensen was based primarily on the fact that one party was prejudiced by the failure to precisely indicate the issues in the notice of appeal because it was precluded from filing a cross-appeal. See Speros v. Fricke,

2004 UT 69, ¶ 16 n. 2, 98 P.3d 28. There is no similar prejudice alleged here. The Utah Supreme Court has also clarified that rule 3(d) of the Utah Rules of Appellate Procedure "does not require that an appellant indicate that the appeal also concerns intermediate orders or events that have led to that final judgment." Id. ¶ 16 (internal quotation marks omitted). Thus, we address Young's argument regarding partial summary judgment.

ter, J., dissenting) (quoting *Peterson v. Western Cas. & Sur. Co.*, 19 Utah 2d 26, 425 P.2d 769, 770 (1967)). She further asserts that an insurance company trying to avoid liability by demonstrating arson must prove such an affirmative defense by a preponderance of the evidence. *See Horrell v. Utah Farm Bureau Ins. Co.*, 909 P.2d 1279, 1282 (Utah Ct.App.1996). Thus, Young argues, because it was undisputed that she had a policy with FIE and that her premium payments were current, the burden then shifted to FIE to prove arson and she was not required to prove that the fire was accidental. Put another way, Young states that the trial court's requirement that she "disprove arson, i.e., that the fire was accidental[,] improperly placed the burden of proving arson on the insured."

¶ 26 In response, FIE argues that the trial court properly granted a directed verdict on grounds that Young "had the burden of proving that she was wrongfully denied coverage by showing the fire was accidentally set" and that she failed to meet that burden. FIE relies on *Metric Construction Co. v. St. Paul Fire & Marine Insurance Co.*, No. 1:03CV37, 2005 WL 2100939, 2005 U.S. Dist. LEXIS 37197 (Aug. 31, 2005), an unpublished federal district court decision, which held that in insurance cases, " '[t]he plaintiff has the burden of proving that [its] loss comes within the coverage stated in the policy.' " *Id.* 2005 WL 2100939 at *2, 2005 U.S. Dist. LEXIS 37197 at *5 (second alteration in original) (quoting *Morris v. Farmers Home Mut. Ins. Co.*, 28 Utah 2d 206, 500 P.2d 505, 507 (1972)). To do that, the *Metric* court explained, the plaintiff "must demonstrate that the property damage was the result of an 'event' as defined by the contract. If [the plaintiff] succeeds in establishing coverage, the burden then shifts to the insurer to raise any exclusions as a defense." *Id.* 2005 WL 2100939 at *2, 2005 U.S. Dist. LEXIS 37197 at **5–6. The *Metric* court further went on to define "event," as it pertained to the policy in that case, as "an accident, including continuous or repeated exposure to substantially

the same general harmful conditions." *Id.* 2005 WL 2100939 at *2, 2005 U.S. Dist. LEXIS 37197 at *6 (internal quotation marks omitted).

¶ 27 In this case, the policy states that an "[o]ccurrence means an accident including exposure to conditions which results during the policy period in bodily injury or property damage. Repeated or continuous exposure to the same general conditions is considered to be one occurrence." The policy also has the following exclusion: "*Intentional Acts.* If any insured directly causes or arranges for a loss to covered property in order to obtain insurance benefits, this policy is void. We will not pay you or any other insured for this loss."[5] To the extent that *Metric* supports FIE's position, that case is merely persuasive authority.

¶ 28 However, FIE also references two Utah state court cases that stand for the same proposition as *Metric*. In *LDS v. Capitol Life Insurance Co.*, 765 P.2d 857 (Utah 1988), the Utah Supreme Court explained that when claiming a right to recovery under an insurance policy, an insured must first bring him or herself within the accident provision in the policy. *See id.* at 859. *LDS* quoted extensively from *Browning v. Equitable Life Assurance Society*, 94 Utah 570, 80 P.2d 348 (1938), where the court explained:

When an insured claims a right to recover under the accident provisions of the policy, all he need do is bring himself within the field therein defined and show his injury or disability was proximately and predominantly caused through violent, external and accidental means. He then has brought himself within the policy, and the terms thereof have been met. He is not required to show there were no latent causes, or other conditions which might have contributed to the result, indirectly or in part. His duty is affirmative; he is not charged with the duty of negativing anything. When he brings himself within the insuring clause he has made ... a prima facie case ... and any exceptions or condi-

---

5. Although the exclusion refers to only intentional acts of the insured, both parties use the terms arson and accident without acknowledging the possibility of an intentional act of arson by or at the direction of someone other than the insured. Thus, arson might be a covered loss, although intentional.

tions which would then deny him relief, take him out of the indemnity provisions, render them inoperative as to him, are matters of defense, and the burden thereof rests upon the insurer.

*Id.* at 350–51 (emphasis omitted). The *LDS* court went on to explain that this theory is couched in the premise that "exclusionary clauses are to be most strictly construed against the insurer.... It must not be forgotten that the purpose of insurance is to insure...." 765 P.2d at 859. Notwithstanding a policy of construction favoring the insured, or the outlier case stating that an insured must only prove a policy is in effect and the premiums are current, *see Fox*, 453 P.2d at 706, based on *LDS* and *Browning*, we conclude that Young was in fact required to present evidence that the fire was the result of an accident, or at least not a result of Young's intentional acts, i.e., the intentional act of someone not connected to Young, before shifting the burden to FIE to prove arson. The next question then becomes what was required of Young to establish her prima facie case? She asserts that the trial court erred, in part, because it required her to establish her prima facie case with expert testimony. FIE, of course, argues that the trial court was correct in so ruling.

2. Expert Testimony Was not Required to Establish a Prima Facie Case that the Fire Was Accidental

■ ¶ 29 In *N.M. v. Daniel E.*, 2008 UT 1, 175 P.3d 566, a recent insurance case, the Utah Supreme Court explained that an occurrence "is not accidental if it is the result of actual design or intended by the insured." *Id.* ¶ 7. Thus, at the directed verdict stage, Young was required to establish at least a genuine issue of material fact regarding whether the fire was the natural and probable consequence of her actions and whether the fire was an expected or intended result of her actions. *See id.* ¶¶ 9, 11. Based on the following explanation, we conclude that, in this particular context, Young was not required to present expert testimony to establish a prima facie case.

¶ 30 In *Bear River Mutual Insurance Co. v. Williams*, 2006 UT App 500, 153 P.3d 798, the defendant homeowners owned a rental property, which was vacant when a fire broke out. *See id.* ¶¶ 2–3. The homeowners filed a claim with Bear River, and Bear River denied it on grounds that two fire inspectors found no accidental cause for the fire, and thus, concluded that the fire had been intentionally set. *See id.* ¶¶ 3–4. Bear River filed a declaratory action in district court, and both parties filed motions for summary judgment. *See id.* ¶¶ 4–5. Bear River supported its motion with affidavits and deposition testimony of the two fire inspectors who had concluded that the fire was intentionally set. *See id.* ¶ 5. The homeowners did not support their motion with any affidavits or evidence; however, they highlighted inconsistencies and gaps in the fire inspectors' reports. *See id.* The trial court granted summary judgment, concluding that "[a]rson is a form of vandalism and malicious mischief, consistent with the exclusion contained in the policy." *Id.* (internal quotation marks omitted). The homeowners appealed, arguing that arson does not come within a policy exclusion, and even if it did, there were issues of fact regarding the cause of the fire, thus precluding summary judgment. *See id.* ¶¶ 7–8.

¶ 31 Regarding the issues of fact argument, this court reversed the trial court's grant of summary judgment on the basis that the evidence surrounding the fire could support the homeowners' position. *See id.* ¶ 17. This court further explained that the cause of the fire could

> have been the result of a carelessly dropped cigarette or match.... [T]here is also the possibility that the fire may have been ignited by fireworks which were then consumed in the blaze. *While none of these theories may be particularly persuasive, we are not permitted to weigh the evidence in reviewing a summary judgment determination.*

*Id.* (emphasis added).

¶ 32 Albeit in the medical malpractice context, the Utah Supreme Court reached a similar conclusion in the recent case, *Bowman v. Kalm*, 2008 UT 9, 179 P.3d 754. There, the court discussed whether expert testimony is required to establish proximate cause and avoid summary judgment. *See id.*

¶¶ 7–15. While explaining the general rule that expert testimony is usually required to establish proximate cause in medical malpractice cases, the court also explained that "[t]here is a limited 'common knowledge' exception to the general requirement." *Id.* ¶ 9. For example, "where the causal connection between the alleged negligence and injury is 'so common,' or is non-medical in nature, expert testimony is not required to prove proximate cause." *Id.* ¶ 10 (citation omitted). This is so because

> "[i]n certain situations, the medical procedure is so common or the outcome so affronts our notions of medical propriety that expert testimony is not required to establish what would occur in the ordinary course of events. In this type of situation the plaintiff can rely on the common knowledge and understanding of laymen to establish this element."

*Id.* (quoting *Nixdorf v. Hicken,* 612 P.2d 348, 353 (Utah 1980)).

¶ 33 Although Young's case does not involve medical malpractice, we think that the common knowledge exception helps to explain why expert testimony is not required in order for Young to establish a prima facie case of liability. More specifically, because this case involves a house fire, to which both parties attribute specific causes, none of which are beyond the grasp of ordinary people, the issue was not beyond the grasp of a jury and expert testimony was not required, in this context, to survive a motion for a directed verdict.

¶ 34 We further conclude that even without expert testimony, Young presented sufficient evidence to create a genuine issue of material fact for the jury. *See Kleinert v. Kimball Elevator Co.,* 905 P.2d 297, 299 (Utah Ct.App.1995) (stating, on a motion for a directed verdict, that "[w]here there is any evidence that raises a question of material fact, no matter how improbable the evidence may appear, judgment as a matter of law is improper"). For example, on cross-examination, Lyman admitted that the fire could have been a flashover fire and could have started in a mattress. Young also highlighted the fact that Lyman failed to interview her son and his friends and he did not inspect the wires that her electrician said were melted. Further, Young's son and his friend testified that they had been at the house the night before the fire, smoking marijuana and playing video games while candles were lit in the room. Although Young's evidence may not be particularly persuasive, it does support her theory that the fire was not the result of arson. Moreover, at the directed verdict stage, the court is not permitted to weigh the evidence, but must only determine whether there is a question of material fact for the jury to consider. *See id.* Thus, there is at least some " 'competent evidence that would support a verdict in [Young's] favor,' " *Carlson Distrib. Co. v. Salt Lake Brewing Co.,* 2004 UT App 227, ¶ 13, 95 P.3d 1171 (quoting *Five F, LLC v. Heritage Sav. Bank,* 2003 UT App 373, ¶ 12, 81 P.3d 105), and a directed verdict was, therefore, inappropriate.

## III. The Trial Court Abused Its Discretion By Refusing to Allow Young's Expert to Testify

¶ 35 Young next argues that the trial court erred by refusing to allow her expert to testify. This court "will not reverse the trial court unless the appellant demonstrates that the trial court has clearly abused its discretion and thereby affected the appellant's substantial rights." *Turner v. Nelson,* 872 P.2d 1021, 1023 (Utah 1994). Relying on *Turner v. Nelson,* 872 P.2d 1021 (Utah 1994), Young argues that the trial court abused its discretion by refusing to allow her expert to testify because the trial court had acknowledged that King was coming from Colorado to testify, it had asked Young to have her expert ready one day earlier, and it had told FIE that Young was not finished with its case-in-chief because King had not testified. Notwithstanding these statements, however, the trial court allowed FIE to move for a directed verdict, prior to the presentation of King's testimony. FIE responds that the trial court did not abuse its discretion because King was designated as a rebuttal expert and since FIE did not present expert testimony, it would have

been "highly prejudicial to Defendant" to allow King to testify.[6] We disagree.

¶ 36 King was originally designated as part of Young's case-in-chief, not as a rebuttal witness. The first time he was referenced as a rebuttal witness was *during* trial, after both parties had submitted their witness lists. Due to the changes in the trial calendar and FIE's decision not to present any expert witnesses, Young "switched gears" and was prepared to examine King as part of her case-in-chief, not as a rebuttal expert. Moreover, although FIE argues that it would have been prejudiced by King's testimony, FIE fails to demonstrate any such prejudice. King's report was submitted to FIE over a year before trial began. Young attempted to have King testify as part of her case-in-chief, in large part as a response to the trial court's decision that it was Young's burden to establish the cause and origin of the fire. Further, King prepared his expert report as a cause and origin expert and FIE had access to that report, including King's conclusions. And, in response to receiving King's report, FIE deposed him. Also detracting from FIE's prejudice argument is the fact that King prepared his expert report in response to several of FIE's witness reports, including those of Lyman and Nelson, both of whom testified at trial. King was not, however, responding to *any* of FIE's designated experts.

¶ 37 In sum, other than the fact that FIE would have had to prepare to cross-examine King as a case-in-chief expert rather than as a rebuttal expert, FIE does not demonstrate how it would have been "highly prejudic[ed]" by King's testimony. *See Turner*, 872 P.2d at 1023 (stating that the purpose of prior notice of witnesses is to give "both parties the opportunity to prepare adequately for trial, including, among other things, deposing witnesses, investigating witnesses' testimony, and preparing an effective cross-examination").

¶ 38 FIE next argues that the trial court did not abuse its discretion because Young failed to comply with rule 103(a) of the Utah Rules of Evidence by not proffering King's testimony and, therefore, did not demonstrate that her substantial rights were affected. *See* Utah R. Evid. 103(a). As previously mentioned, the trial court ruled that it granted FIE's directed verdict because Young

> failed to put on any evidence to support her position that [FIE] breached the contract by showing that the fire was accidentally set (reserving her cause and origin expert for rebuttal), [and] Plaintiff failed to establish that her claim for benefits was wrongfully denied or that [FIE] breached the insurance contract.

Based on the trial court's conclusion that expert evidence was required, it is clear that had King been allowed to testify in Young's case-in-chief, the outcome regarding the motion for directed verdict likely would have been different. We therefore conclude that the trial court abused its discretion by refusing to allow King to testify.

## CONCLUSION

¶ 39 In summary, we conclude that partial summary judgment was appropriate but that the order granting a motion for a directed verdict was not. Consequently, we affirm the partial summary judgment and reverse the directed verdict. We remand for a new trial on grounds that (1) there were issues of material fact precluding a directed verdict; (2) although Young was required to establish a genuine issue of fact in her prima facie case regarding whether the fire was a covered loss, expert testimony was not required; and (3) through the evidence presented at trial, Young met her burden of establishing a prima facie case. Finally, we conclude that the trial court abused its discretion by refusing to allow King to testify.

---

6. FIE also argues that *Turner v. Nelson*, 872 P.2d 1021 (Utah 1994), is inapplicable because that case involved a surprise witness, not a predesignated witness. Although *Turner* states that it is not an abuse of discretion to refuse to "allow a party to call a surprise witness absent 'good cause' for the failure to disclose the witness as required by a court order or rule," *id.* at 1024, FIE acknowledges that the case's general discussion on allowing expert testimony is relevant. *See id.* at 1023–25.

¶ 40 WE CONCUR: WILLIAM A. THORNE JR., Associate Presiding Judge and JUDITH M. BILLINGS, Judge.